UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO RODRIGUEZ, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 14-cv-12338-IT |
| | * |
| NATIONSTAR MORTGAGE LLC, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

October 24, 2014

TALWANI, D.J.

I. Introduction

Plaintiff Mario Rodrigeuz brings this suit against Defendant Nationstar Mortgage LLC ("Nationstar") asserting claims related to Nationstar's April 18, 2004, letter scheduling a foreclosure sale on Rodriguez's house. Presently before this court are Rodriguez's Motion for a Preliminary Injunction to Suspend Foreclosure [#10] and Nationstar's Motion to Dismiss [#6]. For the following reasons, Rodriguez's motion is DENIED AS MOOT and Nationstar's motion to dismiss is ALLOWED.

II. Background[1]

Rodriguez owns property located at 91-93 Grant Street, Somerville, Massachusetts (the

---

[1] Because the issues analyzed here arise in the context of a motion to dismiss, this court presents the facts as they are related in Rodriguez's complaint, see Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Rodriguez, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

"Property"). Verified Compl. ¶ 4 [#1-2] [hereinafter Compl.]. On December 4, 2006, Plaintiff entered into a home mortgage loan with Nationstar's predecessor, BAC.[2] See id. ¶¶ 5, 6.

On January 25, 2010, BAC entered into an Amended Servicer Participation Agreement ("SPA") with the United States Department of Treasury that expressly provided that Bank of America loans were to be included among those loans that are eligible for review under the Home Affordable Modification Program ("HAMP"), a federal program set up to help eligible home owners with loan modifications on their home mortgage debt.[3] Id. ¶ 6. On September 24, 2010, Nationstar entered into an identical SPA with the Department of Treasury. Id. In their SPAs, Nationstar and BAC agreed to

> perform the services in any supplemental.. [sic] **directives**, or other communications, including but not limited to.. [sic] compliance requirements, performance requirements and related remedies, issued by Treasury, Fannie Mae or Freddie Mac in order to change, further describe or clarify the scope of the rights and duties of the Participating Servicers.

Id. ¶ 7. Nationstar also agreed that it would "satisfy certain duties and obligations, with respect to its participation in the Programs." Id.

On February 9, 2012, BAC entered into a Global Settlement with the Department of Justice ("DOJ"), whereby BAC agreed to modify all loans under a "balance forgiveness modification program." Id. ¶ 9.

On July 2, 2012, Rodriguez submitted a HAMP application to BAC. Id. ¶ 10.

---

[2] The complaint calls Nationstar's predecessor only "BAC." Elsewhere in the complaint, Rodriguez refers to Nationstar as "BAC's successor-in-interest." Id. ¶ 8 (emphasis omitted). The complaint does not further define "BAC." From the referenced exhibits to the complaint, it appears that "BAC" may refer to Bank of America, and the Parties referred to "Bank of America" in a hearing before this court. Because the definition of "BAC" is ultimately irrelevant for the disposition of this motion, this court uses "BAC" when relying on a statement in the complaint and "Bank of America" when relying on an exhibit.

[3] See Home Affordable Modification Program, http://www.makinghomeaffordable.gov/programs/lower-payments/Pages/hamp.aspx (last visited October 24, 2014).

On October 5, 2012, BAC issued a denial letter for both HAMP and non-HAMP modifications. Id. ¶ 11. The letter stated: "You are not eligible for a Home Affordable Modification because we service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan." Id. BAC stated further that "the name of your investor is Wells Fargo." Id. Wells Fargo is a HAMP participant and a contracting party to the DOJ settlement. Id. ¶ 12.

On May 16, 2013, BAC issued a denial letter under the Global Settlement agreement on the same basis. Id.

On June 13, 2013, Rodriguez sent a chapter 93A demand letter to Bank of America. See id. ¶ 13; id. at Ex. C (demand letter). Neither BAC nor Nationstar responded. Id. ¶ 13.

On April 18, 2014, Nationstar scheduled a foreclosure sale for May 15, 2014 on the Property. Id. ¶ 14. On May 1, 2014, Rodriguez submitted a HAMP application to Nationstar. Id. ¶ 15. According to HAMP Supplemental Directive 10-02, if a borrower submits a request for HAMP consideration after a foreclosure sale has been scheduled, and the request is received at least seven days before the foreclosure sale date, the servicer must suspend the sale to evaluate the borrower for HAMP. Id. ¶ 16. Nationstar did not suspend the sale to evaluate Rodriguez for HAMP before the filing of the complaint. Id. ¶ 17.

On May 13, 2014, Rodriguez initiated this action in Middlesex County Superior Court. On June 2, 2014, Nationstar removed the action to this court, and four days later Nationstar filed the motion to dismiss that is currently before this court. On June 24, 2014, Rodriguez filed an emergency motion for a temporary restraining order and/or preliminary injunction to suspend the foreclosure on the Property then scheduled for July 1, 2014. After this court scheduled a hearing on that motion but before the hearing had occurred, the Parties requested that the hearing be

cancelled because Nationstar voluntarily agreed to suspend the foreclosure sale. See Stipulation All Parties Cancel Hr'g Prelim. Inj. [#13]. At an October 22, 2014 hearing before this court, Nationstar represented that the foreclosure sale of the Property had been "cancelled indefinitely" and the Parties agreed that Rodriguez's motion for a preliminary injunction was moot.

III. Discussion

   *1.   Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual material "to 'state claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). A court must disregard "'statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action.'" Lemelson v. U.S. Bank Nat'l Ass'n, 721 F.3d 18, 21 (1st Cir. 2013) (alterations omitted) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011)). A court must dismiss a complaint for failure to state a claim "'if the complaint does not set forth factual allegations . . . respecting each material element necessary to sustain recovery under some actionable legal theory.'" Id. (quoting United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 384 (1st Cir. 2011)).

   *2.   Count I*

In Count I, Rodriguez asserts that Nationstar violated certain supplemental HAMP directives and that, accordingly, Nationstar "breached its [Servicer Participation Agreement ("SPA")] with [T]reasury[,] thereby giving rise to a third-party breach of contract claim by the Plaintiff." Compl. ¶ 23.

In MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486 (1st Cir. 2013), the First Circuit held

4

that in disputes over HAMP modifications, "borrowers are not third-party beneficiaries of agreements between mortgage lenders and the government," id. at 491 (citations omitted). In MacKenzie, the First Circuit analyzed an SPA that contained the following language: "'The Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest.'" MacKenzie, 738 F.3d at 492 (quoting Teixeira, 2011 WL 310811, at *2).

The language in the SPA at issue here is identical to the language in MacKenzie. See Compl., Ex. A, 12, § 11(E). Given this language, the First Circuit's holding in MacKenzie bars Rodriguez's third-party breach of contract claim against Nationstar for breaching its SPA. Accordingly, Rodriguez has failed to state a claim in Count I. This court therefore allows Nationstar's motion to dismiss for failure to state a claim with regard to Count I.

*3. Count II*

In Count II, Rodriguez alleges violations of Mass. Gen. Laws ch. 93A.

Chapter 93A does not create a cause of action "in the absence of a cognizable underlying claim of unfair practices." Muckle v. Fremont Inv. & Loan, No. 07-11437-DPW, 2010 WL 1344967, at *2 (Mar. 31, 2010); see Murphy v. Nat'l Grange Mut. Ins. Co., No. 13-11363-FDS, 2014 WL 5307671, at*6 (Oct. 16, 2014). Without reaching the question of whether such a cognizable underlying claim exists here, however, Count II fails because Rodriguez failed to comply with the demand-letter requirement of Chapter 93A. A private action may be brought under Chapter 93A only if "a written demand for relief" has been "mailed or delivered to any prospective respondent" at "least thirty days prior to the filing of any such action." Mass. Gen. Laws ch. 93A, § 9(3); see, e.g., McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 217–18 (1st Cir. 2012) ("The demand letter requirement is not merely a procedural nicety, but, rather, a

5

prerequisite to suit designed to encourage negotiation and settlement and as a control on the amount of damages." (citation, quotations, and alterations omitted)); Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 506 (2011) (noting that a demand letter must be sent "at least thirty days before filing a complaint"); Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 287 (1985). There "is no right to obtain relief for any wrongful act that is not described in the [demand] letter." Smith v. Jenkins, 777 F. Supp. 2d 264, 267 (D. Mass. 2011) (citation omitted). Finally, service of a Chapter 93A demand letter must be made on the specific party against whom a Chapter 93A claim is being asserted. See id. at 269 (explaining that sending a demand letter "to an unrelated entity does not comply with Chapter 93A" (citations omitted)); see also DiBona v. Furnace Brook Office Condominium Ass'n, No. 9701387, 2000 WL 804648, at *3 (Mass. Super. Ct. Jan. 4, 2000).

Here, Rodriguez's demand letter does not meet the standards of Chapter 93A. Rodriguez sent his demand letter on June 13, 2013 to Bank of America, not Defendant. See Compl., Ex. C (demand letter). All of the allegedly objectionable conduct described in the letter is conduct undertaken by Bank of America, not Nationstar. See id. Indeed, Nationstar is not mentioned in the demand letter, presumably because the servicing of the loan has only recently transferred to Nationstar, while the letter was sent much earlier. See Compl. ¶ 5. Because a demand letter must be served on the specific party against whom a Chapter 93A claim is asserted, see Smith, 777 F. Supp. 2d at 269, Rodriguez's demand letter is insufficient. Rodriguez's demand letter is also insufficient because it does not describe the wrongful acts of which he complains in this matter, see id. at 267, which Rodriguez alleges in his complaint occurred in May 2014, after the letter was sent, see Compl. ¶¶ 15, 17 ("On May 1, 2014, the Plaintiff . . . submitted a HAMP application to the Defendant . . . . As of May 12, 2014, the Defendant has scheduled a

6

foreclosure sale . . . in violation of HAMP Supplemental Directive 10-02 and Chapter 93A.").

Because Rodriguez failed to meet the demand letter requirement of Chapter 93A, this court need not address the other requirements of Chapter 93A. On the basis of the lack of the demand letter alone, this court allows Nationstar's motion to dismiss with regard to Count II.

IV. Conclusion

For the foregoing reasons, Rodriguez's motion for a preliminary injunction [#10] is DENIED AS MOOT and Nationstar's Motion to Dismiss [#6] is ALLOWED.

IT IS SO ORDERED.

Date: October 24, 2014 /s/ Indira Talwani
United States District Judge